UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

WILMA CLARK,

                                Plaintiff,

           -against-

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, POLICE OFFICER
IOCCO, POLICE OFFICER DEL VILLAR,
and BEST WESTERN HOTEL,

                          Defendants.

------------------------------------------------------------X

**MEMORANDUM & ORDER**

13-cv-210 (ENV) (MDG)

VITALIANO, D.J.

        Plaintiff Wilma Clark brings this claim against the City of New York (the "City"), the New York City Police Department ("NYPD"), and Police Officers Adam Iocco and David Del Villar for violations of 42 U.S.C. § 1983, and against the Best Western Hotel located at 87-07 Van Wyck Expressway, Jamaica, New York ("Best Western")[1] for violations of New York Executive Law § 296(2) and 42 U.S.C. § 1981.[2] Best Western has filed a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Best Western's motion is denied.

---

[1]   Best Western's corporate name is SIDHDHY VINAYAK LLC. (*See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 1.)

[2]   Although the amended complaint lists a cause of action under Executive Law §§ 296(2) and 296(9), the parties appear to agree that the reference to § 296(9) was a typographical error. The Court assumes that plaintiff intended to refer, instead, to § 292(9), which defines "a place of public accommodation."

## Background

The following facts are drawn from the amended complaint and are accepted as true for purposes of this motion. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Clark is a 62-year-old African American woman. On or about January 10, 2012, Clark purchased and paid for an eleven-day stay at Best Western for her father and brother. (Am. Compl., Dkt. No. 22, ¶ 6.) Clark entered the hotel on January 12, 2012 to meet with her father and brother, who were staying in Room 301, the room she had reserved for them. (*Id.* ¶ 7.) Upon entering Room 301, Clark discovered her sister, Rhonda, who had not been registered as an occupant of the room. (*Id.* ¶¶ 8-9.) Rhonda, who Clark alleges has a history of mental illness, began acting violently, prompting Clark to leave the room. (*Id.* ¶ 10.) Plaintiff later discovered that she had left her pocketbook behind. (*Id.* ¶ 11.) Her sister, however, refused to return it. (*Id.* ¶12.)

Plaintiff then approached Best Western personnel and asked that they access Room 301 and remove her sister. (*Id.* ¶ 55.) Clark advised that she was the lawful occupant of Room 301, although it appears she had made the reservation in her father's name.[3] (*Id.* ¶ 56.) Best Western personnel refused to assist Clark in gaining access to the room, refused to ask her sister to leave, and otherwise ignored her. (*Id.* ¶ 57.) Clark alleges that, by contrast, hotel employees courteously addressed the

---

[3] Best Western asserts that Clark purchased the hotel reservation through the website Priceline and reserved the room under her father's name, a claim Clark does not dispute. (*See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 1 n.2.)

concerns of white patrons, assisted them promptly in accessing their rooms, and never ignored them, although she does not describe when this occurred, how many other patrons were assisted, or give any other detail as to the white patrons who allegedly received better service than she did. (*Id.* ¶ 58.)

Clark then called the police, and requested that hotel personnel do the same. (*Id.* ¶ 12.) Officers Del Villar and Iocco arrived on the scene, where Clark explained the difficulties related to her sister. (*Id.* ¶ 13.) The officers went to Room 301, where Rhonda handed them her sister's pocketbook through the doorway. (*Id.* ¶ 14.) Once given possession of her purse, plaintiff emptied its contents onto the floor, in an effort to ensure that all of her belongings were inside. (*Id.*) As she was checking the contents of her purse, the officers began to treat Clark roughly, grabbing her and shoving her. (*Id.* ¶¶ 15-16.) Clark called 911 to report the officers' misconduct, which led them to shove her into an elevator and force her through the lobby and out of the hotel. (*Id.* ¶¶ 17–18.) After Clark took down the officers' names and shield numbers, they tackled her, she says, and dragged her back across the lobby. (*Id.* ¶ 20.) The officers accused Clark of trespassing and called for backup, alleging that Clark was an emotionally disturbed person who needed to be taken to a psychiatric hospital. (*Id.* ¶ 21.) Clark claims she at no point resisted the officers, but was handcuffed and transported to Jamaica Hospital's Psychiatric Unit, where she was assessed and released several hours later. The psychiatric assessment resulted in a finding that there was no basis on which to commit her involuntarily. (*Id.* ¶¶ 22-25.) Clark was never charged with trespass or any other criminal offense. (*Id.* ¶¶ 26-27.)

After leaving Jamaica Hospital, plaintiff returned to the hotel to see her father. (*Id.* ¶ 59.) However, Best Western staff denied her access to Room 301, and a hotel employee at the main desk, who claimed his name was Tye, called her a "trespassing nigger" and told her she was not allowed inside the hotel. (*Id.* ¶ 60.) Plaintiff demanded that Tye verify, by looking on the hotel's computer, that she had made the reservation and paid for Room 301, but he refused to do so and continued to make racially disparaging comments to her.[4] (*Id.* ¶¶ 61, 67.) Clark subsequently tried to reach her father by calling Best Western's front desk and having her call connected to Room 301, but her request was denied, with hotel personnel disconnecting the call. (*Id.* ¶ 62.) Clark complained to Best Western's management about Tye's comments and behavior, but management did not conduct an investigation or initiate disciplinary proceedings. (*Id.* ¶¶ 68, 71–72.)

Clark commenced this lawsuit on January 14, 2013. The amended complaint was filed on December 3, 2013.

### Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, *Bell Atlantic Corp. v.*

---

[4] Best Western claims that because the room was reserved through Priceline, its personnel did not have access to an electronic record of Clark's transaction. However fatal this fact may be if established at the summary judgment stage, given that there appears no dispute that plaintiff did pay for the room reservation, for the purposes of this motion, the Court accepts plaintiff's assertion that the Best Western did have available access to a record of the transaction in her name. (Am. Compl. ¶ 67).

*Twombly*, 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' ... will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

A complaint must be dismissed under Rule 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. That said, the factual allegations are paramount—"a complaint need not pin plaintiff's claim for relief to a precise legal theory" nor provide "an exposition of his legal argument." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).

<u>Discussion</u>

I.    <u>Plaintiff's § 1981 Claim</u>

Title 42 U.S.C. § 1981(a) provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens." Section 1981(b) clarifies that "the term 'make and enforce contracts'

includes the making, performance, modification, and termination of contracts, and

the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship." To state a claim under § 1981, a plaintiff must make factual

allegations sufficient to support findings that: (1) plaintiff is a member of a

protected class; (2) defendant acted with intent to discriminate against plaintiff;

and (3) defendant's discriminatory act concerned a contractual activity enumerated

under the statute. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085,

1087 (2d Cir. 1993) (per curiam).

Best Western does not dispute that plaintiff has adequately pleaded the first

element; her complaint clearly alleges that she is an African-American woman.

With respect to the second element, a plaintiff "must specifically allege the

events claimed to constitute intentional discrimination as well as circumstances

giving rise to a plausible inference of racially discriminatory intent" to survive a

motion to dismiss. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). This

standard has been found to be met, for example, where a plaintiff "describ[ed]

defendants' actions in detail, and alleg[ed] that defendants selected them for

maltreatment solely because of their color." *Phillip v. Univ. of Rochester*, 316 F.3d

291, 298 (2d Cir. 2003) (internal quotation marks omitted).

Clark alleges that, when she returned to the hotel after being escorted from it

in police handcuffs, Tye uttered a racial epithet as he enforced the apparent hotel-

imposed ban on her re-entry to the hotel. The complaint also spotlights the alleged

6

misconduct of other hotel employees who refused, she says, to connect her call to the

room she had purchased for her father. While "legislation . . . cannot regulate

individuals' conduct so as to ensure that they will never be rude or insensitive,"

*Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (internal quotation

omitted), the alleged use of a racial epithet in connection with Clark's exclusion

from the hotel is sufficient to support her claim of discriminatory intent, at least for

the purpose of the current motion. *See, e.g., Bishop v. Toys "R" Us-NY LLC*, 414 F.

Supp. 2d 385, 391 (S.D.N.Y. 2006) (finding plaintiff met pleading standard for

discriminatory intent where store security guard allegedly subjected plaintiff to

racial epithets, assaulted and detained plaintiff). *Cf. Tejwani v. United Airlines, Inc.*,

No. 08-CV-2966, 2009 WL 860064, at *3 (S.D.N.Y. Mar. 3, 2009) (finding plaintiff

failed to state a § 1981 claim in part because no employee was alleged to have

"uttered any derogatory remarks or comments" while treating plaintiff differently).

This is merely to say that the complaint alleges enough to make a case of racial

discrimination by Best Western plausible.

Finally, to satisfy the third element of a § 1981 claim, plaintiff must

demonstrate that defendant's allegedly discriminatory act concerned contractual

activities enumerated under the statute. The scope of protection under § 1981

includes all contractual rights throughout the course of formation, performance and

termination of a contract.[5] *Compare Perry v. Burger King Corp.*, 924 F. Supp. 548,

---

[5]   Defendant cites *Patterson v. McClean Credit Union*, 491 U.S. 164 (1989), for the proposition

552 (S.D.N.Y. 1996) (holding use of customer bathroom within scope of contractual relationship between customer and fast food restaurant), *with Bishop*, 414 F. Supp. 2d at 392 (holding contractual relationship in sales contract terminates at completion of sale for purposes of § 1981 claim).

Here, plaintiff steps over the Rule 12 threshold by alleging the existence of a continuing contractual relationship based on her reservation and payment for a then-occupied room at the hotel. After that, the nature of the relationship, if any, between Clark and Best Western is far less clear. Since neither party has submitted the terms of the agreement to the Court, perhaps for § 1981 purposes, Clark's agreement with Best Western – as purchaser, but not registered occupant – had ended if Clark, knowingly or not, gifted the reservation to her father. That determination cannot now be properly made. Discovery may show that the right to enter and occupy the hotel room, or any other dealings in connection with the reservation, belonged exclusively to the registered guest. Clearly, Clark alleges her understanding that the contract did provide her with the right to enter and occupy the room despite not being a registered guest of the hotel. (Am. Compl. ¶¶ 52-53.) Best Western counters that only the registered occupant, in this case, Clark's father, has this right. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 1 n.2.)

that § 1981 protects contracting parties against discrimination only in the formation of a contract or in pursuit of legal remedies. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 8.) However, in 1991, and in the wake of this decision, Congress added § 1981(b) expressly expanding the scope of the statute to encompass contractual rights throughout the course of performance. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 450–51 (2008); *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 392 (S.D.N.Y. 2006) *aff'd sub nom. Bishop v. Toys R Us*, 385 F. App'x 38 (2d Cir. 2010).

Presumably, Clark's removal from the hotel by the NYPD on a criminal trespass charge demonstrates Best Western's contrary belief.

Drawing all reasonable inferences in plaintiff's favor, as the Court must for purposes of this motion, the Court assumes, without deciding, that Clark had the right she claims. *See, e.g., Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662–63 (2d Cir. 1996) (holding that disputes over contracts outside the pleadings are "not appropriately resolved on a 12(b)(6) motion"). In the light of this favorable inference, Clark has adequately stated in her amended complaint that the alleged discriminatory acts she pleads concerned a contractual activity protected under § 1981. The motion by Best Western to dismiss the § 1981 claim must be denied, but, of course, without prejudice to Best Western's right to establish, after discovery, that these alleged acts of discrimination came after the contractual relationship had terminated, that is, went beyond her contractual rights and activities with Best Western.

II.    <u>Plaintiff's § 296(2) Claim</u>

New York Executive Law § 296(2) makes it an unlawful discriminatory practice for any "owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation" to "deny to [any] person any of the accommodations, advantages, facilities or privileges" of that accommodation "because of [] race, creed [or] color." N.Y. Exec. Law § 296(2)(a). A "place of public accommodation" is defined in § 292(9) to specifically include hotels and motels. N.Y. Exec. Law § 292(9).

The standard for intentional discrimination under New York Executive Law § 296 is identical to that for claims of discrimination pursuant to § 1981. *Whitehurst v. 230 Fifth, Inc.*, No. 11-CV-0767, 2011 WL 3163495, at \*9 (S.D.N.Y. July 26, 2011); *Drayton v. Toys 'R' Us, Inc.*, 645 F. Supp. 2d 149, 163 (S.D.N.Y. 2009); *see also Davis v. Oyster Bay-E.*, No. 03-CV-1372, 2006 WL 657038, at \*8 n.12 (E.D.N.Y. Mar. 9, 2006) *aff'd*, 220 F. App'x 59 (2d Cir. 2007). Clark's allegations are therefore sufficient to state a claim of discriminatory treatment under § 296(2) for the same reasons her pleadings plausibly assert a § 1981 claim.

There is one crucial additional requirement, however, under New York Executive Law § 296(2). In order to hold Best Western liable for its employee's allegedly discriminatory acts, Clark must also allege facts sufficient to support a finding that "the employer became a party to [the discrimination] by encouraging, condoning or approving it." *Totem Taxi, Inc. v. N.Y. State Human Rights Appeal Bd.*, 65 N.Y. 2d 300, 305, 491 N.Y.S.2d 293, 480 N.E.2d 1075 (1985). On the other hand, affirmative discriminatory action on the part of an employer is not required. "An employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation." *N.Y. State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 686, 496 N.Y.S.2d 411, 478 N.E.2d 268 (1985).

Clark alleges that she reported her discriminatory treatment to Best Western's management and that Best Western failed to take corrective measures or to discipline Tye. (Am. Compl. ¶ 68, ¶¶ 71-72.) These allegations, at this early

pleading stage, support an inference of "calculated inaction in response to discriminatory conduct" *St. Elizabeth's Hosp.*, 66 N.Y.2d at 286; *see also Wal–Mart Stores E., L.P. v. N.Y. State Div. of Human Rights*, 71 A.D.3d 1452, 1453, 897 N.Y.S.2d 348 (4th Dep't 2010). Clark's amended complaint, consequently, states a claim against Best Western under § 296(2), and this branch of defendant's motion is also denied.

## Conclusion

For the foregoing reasons, Best Western's motion to dismiss the claims against it is denied. The parties are referred to Magistrate Judge Marilyn D. Go for her continued pretrial management of the proceedings.

SO ORDERED.

Dated: Brooklyn, New York
September 19, 2014

ERIC N. VITALIANO
United States District Judge